```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION
```

Matthew L. Goins,

       Plaintiff,

    v.                             Case No. 2:12-cv-692

Carolyn W. Colvin,
Acting Commissioner of
Social Security,

       Defendant.

<u>ORDER</u>

      Plaintiff, Matthew L. Goins, brings this action under 42 U.S.C. §§ 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance and supplemental security income benefits. This matter is before the court for consideration of plaintiff's June 21, 2013, Objections (Doc. 19) to the June 19, 2013, report and recommendation of the magistrate judge (Doc. 18), recommending that the court affirm the decision of the Commissioner. For the reasons stated below, the court overrules plaintiff's objections and adopts the magistrate judge's report and recommendation.

<u>I. Standard of Review</u>

      If a party objects within the allotted time to a report and recommendation, the court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Upon review, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The court's review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also*, 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). Put another way, a decision supported by substantial evidence is not subject to reversal, even if the reviewing court might arrive at a different conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). "Substantial evidence exists when 'a reasonable mind could accept the evidence as adequate to support a conclusion [and] . . . presupposes that there is a zone of choice within which the decision-makers can go either way, without interference by the courts.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (internal citation omitted). Even if supported by substantial evidence, however, "'a decision of the Commissioner will not be upheld where the [Commissioner] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

II. Objections

Plaintiff objects to the finding of the magistrate judge that there is substantial evidence supporting the decision of the administrative law judge ("ALJ") denying benefits. Plaintiff is seeking benefits for alleged disabling psychiatric illnesses. The

ALJ aptly summarized the record as follows:

> The evidence in this case paints two contrasting pictures of the claimant.  The first picture, which suspiciously arises only in interactions with personnel evaluating the claimant for purposes of disability, is of a man babbling incoherent nonsense and functioning at a childlike level....  The second picture is strikingly different.  In this picture, which apparently emerges in interactions with all others, the claimant's incoherence and childlike functioning mysteriously vanish, replaced by a man described as alert and oriented, with normal speech and memory and no barriers to learning.

Decision of November 23, 2010, PageID 67.

Plaintiff's complaints of psychological impairments began at the age of 34 in January of 2001, when he sought counseling at Six County, Inc., for nervousness and anxiety.  Sandra Untied, B.S.N., R.N., diagnosed generalized anxiety disorder, and prescriptions for Seroquel and Risperdal were issued. On February 22, 2001, Rawji Shiraz, M.D., diagnosed atypical psychosis.  On March 22, 2001, plaintiff reported that he had stopped taking Risperdal.  At that time, he was described as rational, relevant and coherent, and was diagnosed with major recurrent depressive disorder.  On July 18, 2001, plaintiff reported suffering from irritability and insomnia, and constantly bounced his foot during the appointment.  George Moses, D.O. diagnosed bipolar I disorder.  PageID 332-45.

On November 19, 2007, plaintiff was evaluated by Dr. Lee Roach, Ph.D., a psychologist, at the request of the Bureau of Disability Determination following plaintiff's October 3, 2007, application for disability benefits.  During the evaluation, plaintiff did not answer any questions, and kept repeating one word at a time.  At one point, plaintiff took off his shoes and socks, put himself in the corner, and repeatedly said "bad."  Plaintiff's

3

wife reported that plaintiff had outbursts, was childlike, and did not leave the house. Dr. Roach was not able to assess plaintiff's memory and recall-attention span. Dr. Roach diagnosed low functioning with dementia and undiagnosed and untreated schizophrenia, disorganized type, panic disorder with agoraphobia, expressive language disorder, borderline intellectual functioning, schizotypical personality disorder eccentricities, and intermittent explosive disorder. Dr. Roach noted that plaintiff had not seen a doctor for years and had not sought psychiatric treatment of any kind. Dr. Roach concluded that plaintiff was markedly impaired in his abilities to understand and execute simple instructions, to maintain appropriate attention and concentration, to relate to fellow workers, supervisors, and the public, and to deal with day-to-day stress. PageID 305-316.

At the request of the Bureau of Disability Determination, Floyd Sours, M.A., a psychologist, attempted to examine plaintiff on March 25, 2010, prior to the hearing before the ALJ scheduled on June 4, 2010. However, plaintiff refused to leave the van, and plaintiff's wife answered Mr. Sours' questions. Mr. Sours described plaintiff as being incoherent, rocking back and forth and waving his arms in the air. Mr. Sours diagnosed plaintiff as being schizophrenic. PageID 346-348.

On August 20, 2010, plaintiff's wife requested an assessment of plaintiff by Genesis Healthcare System. The counselor met with plaintiff outside because he refused to come in the building. Plaintiff ran his hands over the table, shook his head, and stated he hadn't done anything wrong. The counselor recommended behavioral health treatment. PageID 390.

The ALJ also noted contact records prepared by personnel at the Bureau of Disability Determination Field Office. *See* Decision, PageID 72. On October 31, 2007, Kristy Brookins reported that plaintiff's speech was halting and that he only said one or two words in answering questions. PageID 189. On June 25, 2008, C. Harlan described plaintiff as looking "like a wild person that you see in a movie." Plaintiff was crying and saying "stop the voices" and "don't hurt me." PageID 220-222.

On the other side of the ledger, the ALJ noted medical records documenting seven emergency room visits by plaintiff from January 2002 to May 2007. PageID 263-304. The ALJ noted that these records reflected that plaintiff had "no apparent or reported difficulties in interacting with others." PageID 68. In particular, the ALJ observed that a report of a May 2007 emergency room visit described plaintiff as being alert and oriented. PageID 73.

The record also includes the report of Dr. Irma Johnston, Psy.D., a state agency reviewing psychologist, who completed a psychiatric review technique of plaintiff. Dr. Johnston observed that plaintiff was not currently receiving psychiatric treatment. She noted that plaintiff answered her questions appropriately and adequately. Plaintiff stated that he was able to grocery shop and perform other activities of daily living, and that he worked on cars at his brother's mechanic shop across the street. Dr. Johnston concluded that plaintiff had mild restriction of activities of daily living, and mild difficulties in maintaining social functioning, concentration, and persistence or pace. She noted that there were no episodes of decompensation. PageID 313-

5

325. On July 28, 2008, Karla Voyten, Ph.D., reviewed the record before Dr. Johnston and concurred in Dr. Johnson's assessment. PageID 327.

The ALJ also considered a Cooperative Disability Investigations Unit report prepared by Investigator Thomas Lombardo. The report indicates that on February 14, 2008, Lombardo went to plaintiff's home under the guise of seeking information about a missing person. He spoke with plaintiff at his brother's house across the street. Plaintiff answered all of Lombardo's questions and asked questions of his own, speaking in a clear and concise voice. Plaintiff stated that he was capable of everyday activities, including grocery shopping, attending appointments, and working. His hands were dirty, as though he had been doing mechanical work, and he stated that he worked on cars at his brother's house. Plaintiff showed no signs of physical or mental impairment. PageID 209-212.

The ALJ observed that the symptoms plaintiff displayed in his interactions with personnel evaluating him for purposes of disability were not present in his interactions with others in different contexts. PageID 73. The ALJ pointed to plaintiff's conversation with Lombardo in March of 2008, and the fact that plaintiff was alert and oriented at a May 2007 emergency department visit. PageID 73. The ALJ found that the record failed to document sufficient objective medical evidence to substantiate the severity and degree of plaintiff's alleged functional limitations. PageID 73. The ALJ concluded that the evidence "reflecting the claimant's mental symptoms when he is interacting with persons not evaluating him for disability purposes is entitled to great weight"

6

and that "the evidence reflecting the claimant's mental symptoms when he is interacting the persons evaluating him for disability purposes is entitled to very little weight."  PageID 71, 73.

The ALJ noted that the opinions and diagnoses of Dr. Roach and Mr. Sours, who evaluated plaintiff at the request of the Bureau of Disability Determination for disability purposes, were entitled to very little weight, and concluded that the symptoms plaintiff displayed at those consultative examinations were not genuine. PageID 71, 73.  The ALJ observed that the evaluation of Mr. Sours, in particular, was entitled to little weight because it was based on a brief contact with plaintiff and information provided by plaintiff's wife.  PageID 74.

The ALJ also observed that there was no evidence that plaintiff had received any mental health treatment or counseling since August, 2001, that he was currently taking psychotropic medication, or that he had ever been hospitalized for mental health treatment and counseling.  The ALJ noted that this lack of treatment and hospitalization "would not be expected if the claimant actually experienced the symptoms he displayed at the psychological consultative examinations, and casts further doubt on the authenticity of the claimant's allegations."  PageID 73.

Plaintiff did not testify at the hearing before the ALJ.  His counsel submitted an affidavit from plaintiff's wife describing plaintiff's alleged mental impairments.  The ALJ considered this information but concluded that the evidence in the record did not support the extent and frequency of symptoms alleged by plaintiff's wife, and that there were no current psychiatric treatment records to corroborate her statements.  He gave the statement of

7

plaintiff's wife little weight, noting that she would benefit if plaintiff were awarded disability benefits, and therefore she had a motive to exaggerate his symptoms.  PageID 73-74.

The ALJ noted "other considerations that weigh heavily against [plaintiff's] overall credibility."  PageID 75.  The ALJ concluded that plaintiff's periods of unemployment could be explained by his extensive criminal history of arrests, convictions and imprisonment for DUI, possession of marijuana, possession of drug paraphernalia, driving without a valid license, providing false information, child abuse, and other traffic violations.  The ALJ found plaintiff's conviction for providing false information to be "especially troubling as it highlights and magnifies the claimant's tendencies for dissembling and exaggeration[.]"  PageID 75.  The ALJ also cited evidence (the February 14, 2008, observations of the investigator for the Cooperative Disability Investigations Unit) that plaintiff had worked as a car mechanic with his brother since the alleged onset date of disability, November 19, 2007.  The ALJ concluded that "while the claimant has medically determinable impairments that could reasonably cause some symptoms and limitations, the above evidence shows that the allegations regarding the extent of such symptoms and limitations are not fully credible."  PageID 75.  The ALJ considered the testimony of vocational expert Michael A. Klein, Ph.D., and found that plaintiff was capable of performing his past relevant work as a mason helper.  PageID 75-76.

In his report and recommendation of June 91, 2013, the magistrate judge summarized the findings of the ALJ as follows:
> The administrative law judge relied on the medical notes from seven emergency room visits from January 2002

through May 2007. The hospital records did not reflect that plaintiff had difficulty interacting with others. The investigator from the Cooperative Disability Investigations Unit also reported that plaintiff was able to interact appropriately with him. The administrative law judge concluded that the opinions of the examining psychologists were entitled to very little weight and that plaintiff's conduct during those examinations was not genuine. (R. 22.) The administrative law judge determined that when plaintiff was not "adopting a childlike affect," he was able to perform daily activities, which included working with his [brother]. (R. 17.) The administrative law judge noted that the record did not contain any evidence of episodes of decompensation for an extended duration. The administrative law judge concluded that the record did not contain sufficient objective medical evidence to substantiate the severity of symptoms alleged by plaintiff. The administrative law judge specifically relied on the fact that plaintiff's demeanor with the investigator, an individual unknown to him, was entirely inconsistent with his allegations that he cannot work due to his nerves, depression, and panic attacks. There are no current psychiatric treatment records to corroborate plaintiff's allegations. Although plaintiff's wife told a Social Security employee that her husband could not get treatment at Six Counties because he had not paid a bill owed the agency, plaintiff offered no evidence that he sought treatment from a publicly funded source and was denied treatment because of his inability to pay. While there is evidence that, if credited by the finder of fact, would support an award of disability benefits, there is substantial evidence supporting the administrative law judge's resolution of the disputed facts. Since the Commissioner, and not the Court, has the duty to make the findings of fact and those findings are supported by substantial evidence, the decision denying benefits must be affirmed.

This court agrees with the analysis of the magistrate judge. "A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion." *Gayheart v. Comm'r of Social Security*, 710 F.3d 365, 374 (6th Cir. 2013)(citing *Colvin*

*v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007)). Because the ALJ's credibility assessment of plaintiff's represented symptoms was based on consideration of the entire record and supported by substantial evidence, it is entitled to deference. *See Sullenger v. Comm'r of Social Security*, 255 Fed.Appx. 988, 995 (6th Cir. 2007) (declining to disturb the ALJ's credibility determination, stating that: "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)); *Walters v. Comm'r of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence.").

III. Conclusion

Having reviewed the record *de novo*, the court determines that there is substantial evidence supporting the ALJ's determination that plaintiff is not disabled, as defined in the Social Security Act. Accordingly, the court overrules plaintiff's objections (Doc. 19) and adopts the magistrate judge's report and recommendation (Doc. 18). The Commissioner's decision is affirmed, and this action is dismissed.

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), the clerk shall enter final judgment affirming the decision of the Commissioner and dismissing this action.

It is so ordered.

Date: September 3, 2013              s/James L. Graham    
                                              James L. Graham
                                              United States District Judge

11